UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | §<br>§<br>§<br>§ | |
| v. | § | Civil Action No. |
| | § | |
| $20,443.00 IN U.S. CURRENCY,<br>Defendant in rem | §<br>§<br>§ | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

United States of America, Plaintiff, files this action for forfeiture against approximately $20,443.00 in United States currency, Defendant in rem, and alleges the following statements.

*Nature of the Action*

1. This is an action to forfeit property to the United States pursuant to 31 U.S.C. §§ 5317(c)(2) and 5332(c)(1).

*Defendant in Rem*

2. Defendant in rem is approximately $20,443.00 in United States currency that was seized from Kevin Arthur Hartshorn and Amulek Hernandez-Alcazar on May 9, 2011, at the George Bush Intercontinental Airport in Houston, Texas.

*Jurisdiction and Venue*

3. This Court has jurisdiction under 28 U.S.C. §1355 because this is an action

for forfeiture.

4. Venue is proper in this Court under 28 U.S.C. §§ 1355 and 1395(a) and (b) because:

> a. the acts or omissions giving rise to the forfeiture occurred in the Southern District of Texas,
>
> b. the property was found in the Southern District of Texas, and
>
> c. this forfeiture action accrued in the Southern District of Texas.

*Basis for Forfeiture*

Currency Reporting Violations

5. The Defendant in rem is subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2) which provides that any property involved in violations of 31 U.S.C. §§ 5316 and 5324(c) may be forfeited to the United States. These statutes state that:

> a) a person shall file a report when the person knowingly transports, is about to transport, or has transported a monetary instrument of more than $10,000 out of the United States. 31 U.S.C. § 5316(a)(1)(A);
>
> b) no person shall, for the purpose of evading the reporting requirements of 31 U.S.C. § 5316, fail to file a report required by 31 U.S.C. § 5316. 31 U.S.C. § 5324(c)(1);
>
> c) no person shall, for the purpose of evading the reporting requirements of 31 U.S.C. § 5316, file a report required by 31 U.S.C. § 5316 that contains a material omission or misstatement of fact. 31 U.S.C. § 5324(c)(2).

## Bulk Cash Smuggling Violations

6.   The Defendant in rem is subject to forfeiture pursuant to 31 U.S.C. § 5332(c)(1) which provides that any property involved in a violation of 31 U.S.C. § 5332(a) may be forfeited to the United States. This statute states that a violation occurs when:

> Whoever, with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States, or from a place outside the United States to a place within the United States....

*Facts*

7.   On May 9, 2011, Kevin Arthur Hartshorn and Amulek Hernandez-Alcazar were preparing to leave the United States aboard Continental Airlines flight #1464 to Cancun, Mexico at the George Bush Intercontinental Airport in Houston, Texas. In the jetway for this flight which contained posters advising passengers of the United States currency reporting requirements, United States Customs and Border Protection Officer (CBP Officer) D. Davila conducted a routine outbound customs inspection of Mr. Hartshorn. Officer Davila asked Mr. Hartshorn if he was transporting more than $10,000 in any monetary instrument, including cash, checks, traveler's checks, money orders or foreign currency for himself or anyone

else. Mr. Hartshorn stated that he was only carrying $8,000 cash. Officer Davila explained that there was nothing wrong with carrying more than $10,000, but he only had to declare the currency if he had it. Mr. Hartshorn stated that he was aware of the currency reporting requirements. He then confirmed in writing that he was transporting $8,000. Officer Davila also asked Mr. Hartshorn if he was traveling with anyone else. Mr. Hartshorn said that no one was traveling with him to Cancun Mexico.

8. Standing directly behind Mr. Hartshorn was Mr. Amulek Hernandez-Alcazar. Officer Davila asked Mr. Hernandez-Alcazar the same questions he asked Mr. Hartshorn. Mr. Hernandez-Alcazar stated that he was transporting $400, and he confirmed this in writing. Both Mr. Hartshorn and Mr. Hernandez-Alcazar were directed to an inspection table for verification of their funds.

9. At the inspection area, CBP Officer Augustin Hernandez III directed Mr. Hartshorn to place all of his currency on the inspection table. Mr. Hartshorn placed his wallet on the table which contained $43. Mr. Hartshorn also pulled out $5,000 from his left shoe which was under his shoe insert in a blank envelope. CBP Officer Cabral asked Mr. Hartshorn where the rest of the $8,000 that he declared was. Mr. Hartshorn said that it was on his debit card.

10. At this time Officer Hernandez started inspecting and interviewing Mr.

Hernandez-Alcazar. Officer Hernandez noticed that Mr. Hernandez-Alcazar was wearing the same type of shoe as Mr. Hartshorn but in a different color of brown. Mr. Hernandez-Alcazar presented $400 to Officer Hernandez. Officer Hernandez asked Mr. Hernandez-Alcazar to remove his shoes due to the similarity with Mr. Hartshorn's shoes. Officer Hernandez found a blank envelope with $5,000 under each shoe insert. Mr. Hernandez-Alcazar claimed that he forgot about that money.

11. Officer Cabral asked Mr. Hartshorn if he knew Mr. Hernandez-Alcazar, and Mr. Hartshorn said that he knew him. Also Mr. Hernandez-Alcazar said that he knew Mr. Hartshorn. Mr. Hartshorn said that the money that Mr. Hernandez-Alcazar was carrying belonged to him. Mr. Hartshorn was patted down and an additional $5,000 was found on him. Mr. Hartshorn and Mr. Hernandez-Alcazar were transporting approximately $20,443. CBP Officers seized these funds for forfeiture.

12. During an interview with Special Agent Hector Villarreal, United States Homeland Security Investigations, Mr. Hernandez-Alcazar said that Mr. Hartshorn gave him the shoes with the money concealed under the sole that morning.

*Relief Requested*

13. Plaintiff requests:

    (a) that the Clerk of the Court issue an arrest warrant because the

property is in the government's possession pursuant to Rule G(3)(b)(i), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions,

(b) a judgment of forfeiture, and

(c) costs and other relief to which the Plaintiff may be entitled.

Date November 22, 2011.

> Respectfully submitted,
>
> Kenneth Magidson
> United States Attorney
>
> By: s/ Albert Ratliff
> Albert Ratliff
> Attorney-in-Charge
> NY Bar No. 1073907
> SDTX Bar No. 6764
> Assistant United States Attorney
> United States Attorney's Office
> P. O. Box 61129
> Houston, Texas  77208
> E-mail: albert.ratliff@usdoj.gov
> Office: (713) 567-9579
> Fax: (713) 718-3300

*Verification*

I, Hector Villarreal, Special Agent, United States Homeland Security Investigations, declare under penalty of perjury as provided by 28 U.S.C. §1746 that I have read this Verified Complaint for Forfeiture in Rem, and the facts stated

in this complaint are true and correct to the best of my knowledge and belief.

Executed on November 22, 2011.

_____
Hector Villarreal, Special Agent
United States Homeland Security Investigations